Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| MIGUEL G. RIVERA GARCÍA<br><br>Recurrido<br><br>v.<br><br>NATALIA LARTIGAUT TORRES<br><br>Peticionaria | KLCE202300072 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Germán<br><br>Caso número: MZ2019RF00082<br><br>Sobre: Relaciones Paterno/Materno Filiales |

Panel integrado por su presidenta, la juez Domínguez Irizarry, la juez Rivera Marchand y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2023.

Comparece ante nos la peticionaria, Natalia Lartigaut Torres, y nos solicita que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia (TPI) el 22 de diciembre de 2022 y notificada al día siguiente. En la determinación, el tribunal otorgó la custodia monoparental al recurrido Miguel G. Rivera García de los dos hijos menores de edad habidos entre las partes. Por otro lado, la peticionaria solicita la revisión de otra *Resolución* emitida y notificada por el TPI el mismo día, mediante la cual encontró a la peticionaria incursa en desacato criminal; imponiéndole el pago de mil dólares ($1,000.00) por concepto de honorarios de abogado a favor del recurrido y el pago de quinientos dólares ($500.00) por concepto de sanción económica.

Sobre el error que hace referencia a la *Resolución* emitida por el TPI en cuanto a la custodia de los menores, adelantamos que lo acogemos como apelación dejando inalterada su designación alfanumérica de conformidad con los resuelto en *Figueroa v. Del Rosario*, 147 DPR 121 (1998).

Número Identificador

SEN2023 _____

Con relación al dictamen interlocutorio recurrido y por los fundamentos que exponemos a continuación, expedimos el auto de *certiorari,* modificamos el dictamen sobre el desacato y, así modificado, se confirma. En cuanto al dictamen de custodia, se confirma. Veamos.

**I**

La controversia ante nuestra consideración inició el 10 de septiembre de 2021, cuando la peticionaria solicitó la custodia monoparental de los dos menores habidos entre esta y el recurrido. En su escrito relató las desavenencias que le impidieron cumplir cabalmente con los acuerdos de custodia compartida. En consecuencia, solicitó la custodia monoparental.[1]

Por su parte, el 30 de septiembre de 2021, el recurrido presentó su escrito titulado *Moción en Cumplimento de Orden y en Oposición a Custodia Monoparental.* En esencia, sostuvo que las alegaciones de la demanda para solicitar la custodia monoparental eran frívolas y no procedía alterar el decreto de custodia previamente emitido.[2]

Así las cosas, el 1ro de octubre de 2021, el foro de instancia emitió una orden a la Unidad de Trabajo Social de la Oficina de Relaciones de Familia (ORF) con el fin de que dicha unidad realizara un Estudio Social Forense, a través del cual se evaluara la custodia compartida y las relaciones filiales, según previamente estipuladas por las partes. No obstante, previo a que se sometiera el Informe Social Forense, el 15 de diciembre de 2021, la trabajadora social, Inés Vázquez Cintrón, sometió una *Moción Informativa y en Solicitud de Orden Urgente* con el fin de que el TPI ordenara la investigación de ciertas alegaciones de maltrato hacia los menores por parte de la peticionaria. En atención a la solicitud realizada, el 27 de diciembre de 2021, el foro primario emitió una orden a la Unidad de Investigaciones Especiales del Departamento de la Familia para que realizara la investigación correspondiente y se informara, a la trabajadora

---

[1] Véase, *Moción Custodia Monoparental*, Anejo XXI, páginas 64 a la 66 del *Alegato en Oposición a la Apelación.*
[2] Véase, Anejo XXII, páginas 68 a la 69 del *Alegato en Oposición a la Apelación.*

social de la Unidad de Trabajo Social de la ORF, el resultado de dicha gestión.

Consecuentemente, el 24 de mayo de 2022, se unió al expediente judicial el *Informe Social Complementario.*[3] De dicho informe surge, entre otros asuntos, que las alegaciones de maltrato que fueron remitidas al Departamento de la Familia fueron encontradas con fundamento. Además, indica que ambos padres exhibían capacidades protectoras debilitadas que requerían ser fortalecidas para garantizar la salud y seguridad de los menores.  Ante los hallazgos de la investigación realizada, la trabajadora social Vázquez Cintrón le recomendó al TPI lo siguiente:

> [Otorgar] custodia al padre.
>
> Relaciones maternofiliales: Plan mínimo de visitas los sábados de 9:00 am a 6:00 pm. No obstante, si hay algún acuerdo o los menores desean pernoctar con esta así se le permita. No debe haber conflictos o discusiones entre ellos durante la estancia de los niños. Llamadas telefónicas con los menores diariamente. La madre en función de patria potestad compartida puede continuar participando de los servicios médicos y escolares de sus hijos.
>
> Se recomienda las terapias de comunicación intensivas a los padres y terapias familiares que incluya a los hijos. Si estos mejoran la misma en un futuro pueden retomar la custodia compartida.
>
> Que se le prohíba a cualquiera de los padres incurrir en situaciones de maltrato hacia sus hijos.
>
> Se ordene al Departamento de la Familia proveer servicios intensivos de orientación a la Sra. Natalia Lartigaut.
>
> Las partes y los menores acudan a evaluación privada por si requieren tratamiento lo comiencen con el mismo médico.

Según surge de la *Resolución* que atendió el asunto de la custodia, las partes tuvieron la oportunidad de expresarse sobre el referido informe. El 3 de junio de 2022, el recurrido sometió un escrito mediante el cual expresó estar de acuerdo con las determinaciones y las recomendaciones del informe. Ese mismo día, la peticionaria se opuso al contenido de dicho informe.

---

[3] Véase, Apéndice 3, páginas 27 a la 42 del apéndice del *Certiorari Civil.*

En atención a ello y tras varias incidencias procesales, el foro de instancia señaló una *Vista de Impugnación del Informe Social Forense.* A dicha vista comparecieron las partes con su representación legal y la trabajadora social de relaciones de familia. Evaluada la prueba documental y testifical sometida ante su consideración y de conformidad con la credibilidad que le mereció, el foro primario, en atención al bienestar de los menores, resolvió lo siguiente:

Se entrega la custodia monoparental de los menores: [GNRL] y [MARL] al padre, Sr. Miguel G. Rivera García.

Se ordena el establecimiento [de] relaciones maternofiliales, acogiendo como un plan mínimo para ellas, el que los menores se relacionarán con su madre todos los sábados. Esto a partir del 25 de noviembre de 2022 desde las 9:00 a.m. hasta las 6:00 p.m. Si hay algún acuerdo y los menores desean pernoctar con la madre, se autoriza a que se les permita hacerlo.

Se instruye a las partes de que no debe haber conflictos o discusiones durante la estancia de los menores en sus hogares.

Se permitirán llamadas telefónicas con los menores, en relación a la madre no custodia, diariamente.

Se aclara a las partes, que la señora Natalia Lartigaut, en el ejercicio de la patria potestad que ostenta sobre sus hijos, podrá participar de los servicios médicos y escolares de los menores.

Se ordena a las partes, recibir terapias de comunicación intensivas y terapias familiares que incluya a los menores, bajo apercibimiento de desacato. Aclarándose además a las partes, que si eventualmente mejora la situación, no se descarta que en un futuro se pueda retomar la custodia compartida.

Tomen conocimiento las partes que las custodias no son definitivas y se pueden reevaluar en cualquier momento.

Se prohíbe a las partes incurrir en situaciones de maltrato hacia sus hijos.

Se emite Orden dirigida al Departamento de la Familia de Puerto Rico, para que provea servicios intensivos de orientación a ambos padres biológicos.

Se ordena a las partes y a los menores, a acudir a evaluación privada por un psiquiatra, a los fines de que se les pueda ofrecer tratamiento, de ser requerido.

**En atención a la custodia otorgada al Sr. Miguel G. Rivera García y el ejercicio inmediato de la misma por el padre custodio, se ordena a la señora Natalia Lartigaut entregar a la menor Natalia, con sus pertenencias al padre, a las**

**8:00 p.m., en el Burger King del pueblo de Cabo Rojo, bajo apercibimiento de desacato**.

Se le concede a la demandada (Natalia Lartigaut Torres) hasta el domingo a las 5:00 p.m. para entregar las pertenencias de los menores, que no se hayan entregado el 18 de noviembre de 2022 al padre.

Como medida cautelar, además, el Tribunal le concede a la trabajadora social, Sra. Inés Vázquez Cintrón, cuarenta y cinco (45) días, para someter al Tribunal las recomendaciones en cuanto a los peritos a los cuales las partes puedan ser referidas. Además, asegurarse que el Departamento de la Familia le ofrezca a las partes los servicios que ameritan, según ordenado.

De igual forma, se le concede a la trabajadora social Inés Vázquez Cintrón veinte (20) días a partir de hoy para que de manera preventiva realice una visita al hogar de papá, para que se asegure que todo está encaminado. (Énfasis nuestro).

En atención a lo resuelto por el foro primario, el 21 de noviembre de 2022, la peticionaria presentó la *Moción Urgente en Solicitud de Remedio.*[4] En su escrito, expuso que, en cumplimiento con lo ordenado por el TPI, había acudido acompañada de su hija al lugar determinado para entregar a la menor, junto con sus pertenencias, al recurrido. Sin embargo, indicó que la menor se negó a irse con el recurrido debido a la alegada situación emocional de esta. Además, radicó una querella de incidente ante la policía. En la súplica, solicitó que la trabajadora social del tribunal evaluara a la menor y fungiera como intermediaria en el proceso de entrega de esta. A su vez, le solicitó al tribunal que le requiriera a la psicóloga de la menor emitir alguna recomendación atemperada a la realidad actual del estado emocional de la menor, con el fin de facilitar el cumplimiento de la orden.

Por su parte, en esa misma fecha, el recurrido presentó la *Moción Urgente en Solicitud de Desacato y en Solicitud de Remedio.*[5] En esencia, alegó que la peticionaria nunca tuvo la intención de entregar a la menor, toda vez que estuvo casi dos horas negándose a entregarla y no llevó los medicamentos que esta ingería. En vista de ello, le solicitó al TPI que encontrara a la peticionaria incursa en desacato; ordenara su ingreso

---

[4] Véase, *Moción Urgente en Solicitud de Remedio*, Apéndice 4, páginas 43 a la 45 del apéndice del *Certiorari Civil*.
[5] Véase, *Moción Urgente en Solicitud de Desacato y en Solicitud de Remedio*, Apéndice 5, páginas 46 a la 47 del apéndice del *Certiorari Civil*.

inmediato en una institución penal del país; y le impusiera el pago de mil dólares ($1,000.00) por concepto de honorarios de abogado a favor de este. Cabe señalar que, el mismo 21 de noviembre de 2022, la peticionaria presentó la *Breve Réplica[6]* y, a su vez, la *Moción sobre Cita con la Psicóloga de Menor y Reiterada Solicitud de Remedio.[7]* En lo pertinente, se opuso a la solicitud de desacato y alegó que, a pesar de realizar esfuerzos para que una psicóloga atendiera a la menor, esto no fue posible debido a que no contaba con la autorización del recurrido. De igual forma, reiteró la solicitud para que el TPI ordenara la intervención, tanto de la psicóloga como de la trabajadora social del tribunal.

En atención a la solicitud de desacato presentada por el recurrido, el TPI señaló una vista urgente para el 22 de noviembre de 2022 y le ordenó a la peticionaria que compareciera a mostrar causa por la cual no se le debía encontrar incursa en desacato por el incumplimiento con la orden.[8]

Celebrada la vista el 22 de noviembre de 2022, el TPI encontró a la peticionaria incursa en desacato criminal por haber incumplido con la *Resolución y Orden* emitida en corte abierta el 18 de noviembre de 2022. No obstante, en lugar de ordenar su arresto e ingreso, le impuso a la peticionaria el pago de mil dólares ($1,000.00) por concepto de honorarios de abogado a favor del recurrido, a tenor con lo dispuesto en la Regla 44.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, y una sanción económica de quinientos dólares ($500.00) a favor del Estado, al amparo de la Regla 44.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 44.2. Igualmente, le apercibió que el incumplimiento con lo ordenado podría conllevar que fuera encontrada incursa en desacato criminal.

Inconforme, el 7 de diciembre de 2022, la peticionaria presentó la *Moción de Reconsideración en Corte Abierta de 22 de noviembre de 2022*.[9]

---

[6] Véase, *Breve Réplica*, Apéndice 6, páginas 48 a la 49 del apéndice del *Certiorari Civil*.
[7] Véase, *Moción sobre Cita con la Psicóloga de Menor y Reiterada Solicitud de Remedio*, Apéndice 7, páginas 50 a la 51 del apéndice del *Certiorari Civil*.
[8] Véase, *Orden de Mostrar Causa*, Apéndice 8, página 52 del apéndice del *Certiorari Civil*.
[9] Véase, *Moción de Reconsideración en Corte Abierta de 22 de noviembre de 2022*, Apéndice 10, páginas 64 a la 66 del apéndice del *Certiorari Civil*.

Mediante la misma, solicitó al foro primario que reconsiderara la imposición de los honorarios de abogado y las sanciones impuestas.

Insatisfecha, el 23 de enero de 2023, la peticionaria comparece ante nos y formula los siguientes señalamientos de error:

> Erró y abusó de discreción el TPI al imponerle a la madre el pago de $1,000.00 de honorarios de abogado y una sanción de $500.00 al encontrarla incurso en desacato por no entregar a la menor cuando su actuación fue en protección de su hija.

> Erró y abusó de discreción el TPI al determinar un cambio de custodia y relaciones filiales en un proceso parcializado en contra de la madre sin tomar en consideración los deseos de la menor [GNRL] y la recomendación de la trabajadora social del Tribunal.

El 25 de enero de 2023, la peticionaria sometió la *Moción en Solicitud de Reproducción de Prueba Oral.* En ella, advirtió que estaría utilizando como medio de prueba la regrabación de los procedimientos de la vista celebrada el 22 de noviembre de 2022, donde el TPI atendió los planteamientos relacionados al desacato.  En atención a dicha solicitud, el 2 de febrero de 2023, emitimos una *Resolución* mediante la cual le concedimos un término de treinta (30) días, contados a partir de la entrega de la regrabación, para someter la transcripción estipulada de la vista del 22 de noviembre de 2022. A su vez, otorgamos a la parte recurrida el término de quince (15) días para presentar su escrito en oposición, contados a partir de la fecha en que se presentara la transcripción de la regrabación estipulada.

Tras varios incidentes procesales, entre ellos la presentación de la transcripción estipulada, el 6 de marzo de 2023, compareció la parte recurrida y presentó el *Alegato en Oposición a la Apelación.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A

El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un

foro inferior. *800 Ponce de León Corporation v. American International Insurance Company*, 205 DPR 163 (2020); *IG Builders Corp. v. BBVAPR*, 185 DPR 307, 337–338 (2012). La determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *Íd.*

Reiteradamente, se ha resuelto que la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las que este Tribunal de Apelaciones habrá de expedir un recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Es decir, cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo". *Íd.* Asimismo, dispone los supuestos en que este foro apelativo intermedio podrá revisarlas, con carácter discrecional y a manera de excepción, en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.40, establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de este recurso discrecional. La referida Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R.40.

**B**

El Art. 2.017 de la Ley Núm. 201-2003, mejor conocida como la Ley de la Judicatura, dispone que los jueces y las juezas tienen el poder para castigar por desacato. 4 LPRA sec. 24o(j). El procedimiento de desacato en nuestra jurisdicción proviene de tres fuentes jurídicas y se fundamenta en "el poder inherente de los tribunales para hacer cumplir sus órdenes". *E.L.A. v. Asoc. de Auditores*, 147 DPR 669, 681 (1999). Dicho mecanismo está dirigido a que los jueces puedan guardar e imponer el orden en su presencia y en los procedimientos ante su consideración. Por esta razón, se utiliza para que los tribunales vindiquen su autoridad y dignidad, además de hacer cumplir sus órdenes, sentencias y providencias. *In re Velázquez Hernández*, 162 DPR 316, 326 (2004). Este mecanismo también se utiliza para realizar u ordenar cualquier acto que resulte necesario a fin de cumplir a cabalidad sus funciones. *Íd.*

En nuestra jurisdicción coexiste el desacato civil con el desacato en el ámbito penal, regulado por la Regla 242 de Procedimiento Criminal, 34 LPRA Ap. II, R. 242. Dicha regla le concede al acusado en todo caso de desacato criminal, previo aviso, la oportunidad de ser oído. El aviso expondrá el sitio, hora y fecha de la vista, concederá al acusado un tiempo razonable para preparar su defensa, hará saber al acusado que se le imputa un desacato criminal y expondrá los hechos esenciales constitutivos del mismo. Ahora bien, en aquellas instancias en que el juez certifique que vio u oyó la conducta constitutiva de desacato, y que se cometió en presencia del tribunal, el desacato podrá castigarse de forma sumaria. La orden condenando el desacato expondrá los hechos y será firmada por el juez, dejándose constancia de ella en las minutas del tribunal. *Íd.*

La autoridad de condenar por desacato es un poder inherente de todos los tribunales; su existencia es esencial para la conservación de orden en los procedimientos judiciales y para hacer cumplir las sentencias, órdenes y autos de los tribunales y, por lo tanto, para la debida administración de la justicia. *Pueblo v. Pérez Díaz*, 99 DPR 788, 800 (1971).

Por otra parte, cuando nos referimos al desacato civil, el debido proceso de ley exige que, previo a su imposición, se conceda una orden para mostrar causa dentro de un término razonable, la oportunidad de conocer la falta que se le imputa, las circunstancias bajo las cuales, y el sitio y fecha en que la incurrió, y los hechos que la constituyen, de manera que la persona tenga una oportunidad razonable de presentar su defensa. La sentencia mediante la cual se castiga con la imposición del desacato civil ha de establecer el acto o actos constitutivos de dicho desacato, así como la fecha y lugar de su comisión y las circunstancias de la misma. *Pueblo v. Pérez Diaz*, supra, pág. 802.

## C

Las Reglas de Procedimiento Civil le permiten a los tribunales imponer el pago de una suma por concepto de honorarios de abogado a una parte que actúa con temeridad durante el proceso judicial. A esos efectos, la Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R.44.1 (d), en lo pertinente dispone:

> […]
>
> (d) En caso que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta.

El Tribunal Supremo de Puerto Rico ha definido el concepto temeridad como la actuación terca, obstinada, contumaz y sin fundamentos, de un litigante que obliga a la otra parte innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito. *Flores Berger v. Colberg*, 173 DPR 843 (2008), citando a *Rivera v. Tiendas Pitusa*,

148 DPR 695, 701 (1999); *Domínguez v. G.A. Life*, 157 DPR 690, 706 (2002). La determinación de temeridad es un asunto discrecional de los tribunales de instancia y los tribunales apelativos solo pueden intervenir ante la existencia de abuso de discreción. *Íd.*

El requisito de la existencia de una actuación temeraria hace que la Regla 44.1 de Procedimiento Civil, *supra*, tenga el propósito de penalizar o sancionar a la parte que incurre en la conducta proscrita por dicha regla. Véase, *Corpak, Inc. v. Ramallo Brothers Printing, Inc.*, 125 DPR 724 (1990). En *Corpak*, el Tribunal Supremo enumeró algunos requisitos que los tribunales de instancia debemos evaluar al momento de cuantificar la partida de honorarios de abogado que se impondrá, tales como: "[L]a naturaleza del litigio, las cuestiones de derecho envueltas en el mismo, la cuantía en controversia, el tiempo invertido, los esfuerzos y actividad profesional que hayan tenido que desplegarse, y la habilidad y reputación de los abogados envueltos". *Corpak, Inc. v. Ramallo Brothers Printing, Inc.,* supra*.

Por otro lado, la Regla 44.2 de Procedimiento Civil, 32 LPRA Ap. V, R.44.2, autoriza al tribunal a imponer costas interlocutorias a las partes o sanciones económicas a las partes o a sus abogados en todo caso o en cualquier etapa de los procedimientos si éstos incurren en "demora, inacción, abandono, obstrucción o falta de diligencia en perjuicio de la eficiente administración de la justicia". El Tribunal Supremo ha expresado que su propósito primordial es "proveer al tribunal un instrumento adicional para agilizar los procedimientos y de esta manera evitar la demora y congestión en los tribunales". *Pérez Torres v. Acad. Perpetuo Socorro*, 182 DPR 1016, 1027 (2011), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 748-49 (1986).

**D**

El Tribunal Supremo ha reiterado en múltiples ocasiones que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo*

*v. Valentín Rivera*, 197 DPR 636 (2017); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011).

Recientemente, el Tribunal Supremo reiteró que, en consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando un peticionario señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que este ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo de Puerto Rico v. Pérez Delgado,* 2023 TSPR 35, resuelto el 23 de marzo de 2023. En su opinión, el más Alto Foro resaltó que los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. A su vez, subrayó que es tarea del peticionario presentar al foro revisor la prueba oral bajo la cual se pretende impugnar las determinaciones del tribunal *a quo. Íd.* Además, precisó que:

> [C]uando la impugnación de las determinaciones de hecho se base en la prueba oral desfilada, así como en la credibilidad que le mereció a la agencia administrativa, este Tribunal ha expresado que "[e]s imprescindible que se traiga a la consideración del foro revisor la transcripción de la vista celebrada o una exposición narrativa de la prueba". (Cita omitida). Dicho de otro modo, los tribunales apelativos no deben intervenir con la apreciación de la prueba oral hecha por la agencia recurrida cuando no se tiene forma de evaluar la evidencia presentada debido a que la parte promovente no elevó una transcripción o una exposición narrativa de tal prueba. J.A. Echevarría Vargas, Derecho administrativo puertorriqueño, San Juan, Ed. SITUM, 2017, pág. 325. *Íd.*, citando a *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117 (2019). (Énfasis omitido)*.*

En lo pertinente, y con relación a las transcripciones de la prueba oral, las Reglas 19 y 20 del Reglamento de Apelaciones establecen, lo siguiente:

Regla 19 — Reproducción de la prueba oral

(A) Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado,

someterá una transcripción, una exposición estipulada o una exposición narrativa de la prueba.

(B) La parte apelante deberá acreditar, dentro del término de diez días siguientes a la presentación de la apelación, que el método de reproducción de la prueba oral que utilizará es el que propicia la más rápida dilucidación del caso, pudiendo el tribunal determinar el método que alcance esos propósitos.

(C) El tribunal podrá imponer costas y sanciones a la parte o a su abogado o abogada de determinar que obstaculizaron el logro de la reproducción de la prueba oral y ocasionaron retraso en cuanto a la solución del recurso. Asimismo, podrá imponer sanciones a cualquier parte o a su abogado en los casos en que intencionalmente se le haya hecho una representación incorrecta al Tribunal de Apelaciones sobre el contenido de la prueba testifical. 4 LPRA Ap. XXII-B, R.19

Regla 20 — Transcripción; exposición estipulada; exposición narrativa

La reproducción de la prueba oral mediante transcripción se hará conforme las disposiciones de la Regla 76 y mediante exposición narrativa o exposición estipulada, conforme las disposiciones de la Regla 76.1, 4 LPRA Ap. XXII-B, R.20

**III**

En su segundo señalamiento de error, la peticionaria sostiene que el foro primario erró y abusó de su discreción al determinar un cambio de custodia y relaciones filiales durante un proceso parcializado en contra de esta sin tomar en consideración los deseos de la menor y la recomendación de la trabajadora social del tribunal. Ciertamente, el referido señalamiento va dirigido a cuestionar la apreciación de la prueba por parte del TPI y los acontecimientos ocurridos en las vistas de Impugnación de Informe celebradas el 9 y 18 de noviembre de 2022, de cuya *Resolución* se recurre.

Para poder entender señalamientos de error sobre apreciación de la prueba, la parte peticionaria tiene el deber de cumplir con lo dispuesto en las Reglas 19, 20, 76 y 76.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.19, R. 20, y R. 76, en lo relativo a la reproducción de la prueba oral y la transcripción, exposición estipulada o narrativa de la prueba oral. En ausencia de la transcripción de la prueba oral, la norma general es que la evaluación de credibilidad del foro de instancia merece todo nuestro respeto y consideración. Las apreciaciones del TPI deben ser objeto de gran deferencia en ausencia de circunstancias extraordinarias o

indicios de pasión, perjuicio, parcialidad o error manifiesto que amerite nuestra intervención. En este caso, la peticionaria se limitó a presentar la transcripción estipulada de la vista del 22 de noviembre de 2022, en la cual se ventilaron los asuntos pertinentes al desacato por incumplimiento de orden. Por tanto, ante la ausencia de transcripción de prueba que nos pusiera en posición de considerar el error señalado, se confirma la determinación sobre custodia y relaciones maternofiliales.

Ahora bien, en el primer señalamiento de error, la peticionaria alega que el TPI incidió al imponerle el pago de $1,000.00 por concepto de honorarios de abogado y una sanción de $500.00. Además, aduce que erró el foro primario al encontrarla incursa en desacato. Arguye, que la actuación mediante la cual incumplió con la orden dictada por el foro primario fue en protección de su hija, quien al momento de los hechos se encontraba emocionalmente descompensada y negó irse con el recurrido.

Luego de examinar la totalidad del expediente, colegimos que, si bien la peticionaria incumplió con la orden emitida en corte abierta por el TPI el 18 de noviembre de 2022, estamos ante un desacato civil, no criminal. Veamos.

Según discutimos, cuando se pretende imponer un desacato criminal a una parte, la Regla 242 Procedimiento Criminal, *supra*, dispone que el desacato criminal podrá castigarse en forma sumaria siempre que el juez o la jueza certifique que la conducta constitutiva de desacato se cometió en presencia del tribunal. Por otro lado, la citada Regla establece que, en las instancias en las que el acto no se comete en presencia del juez o jueza, debe utilizarse el procedimiento ordinario, en el que son necesarias las garantías de todo procedimiento criminal incluyendo, entre otras: la oportunidad de ser oído; una notificación adecuada que deberá exponer los hechos esenciales constitutivos del desacato criminal que se le imputa, así como el sitio, hora y fecha de la vista; un tiempo razonable para preparar su defensa; y el derecho a libertad provisional bajo fianza.

Evaluado el expediente, con el beneficio de la transcripción de la vista y de conformidad con la normativa expuesta, colegimos que el TPI no incidió al encontrar incursa en desacato a la peticionaria, toda vez que esta incumplió con una orden del tribunal y este ostenta el poder de vindicar su autoridad. Si bien no surge expresamente que se encontrara a la peticionaria incursa en desacato criminal, de la *Resolución* emitida el 22 de noviembre de 2022, se desprende que el foro primario hizo alusión al desacato criminal al citar la Regla 242 de Procedimiento Criminal, *supra*, y el Artículo 279 del Código Penal de Puerto Rico, 33 LPRA sec. 5372, en las conclusiones de derecho de dicha determinación. De la *Orden para Mostrar Causa* emitida por el TPI el 22 de noviembre de 2022, surge que este se limitó a mencionar la palabra "desacato", por lo que esta no contiene un apercibimiento de desacato criminal, conforme lo exige la Regla 242 de Procedimiento Criminal, *supra*, incumpliendo así con las exigencias procesales y de debido proceso de ley. Por tal razón, en este caso, contrario a lo aludido por el TPI, no estamos ante un procedimiento de desacato criminal, sino ante uno civil.

Ello no priva al foro primario de la imposición de honorarios de abogado y sanciones al amparo de las Reglas 44.1 y 44.2 de Procedimiento Civil, *supra*, tal cual lo hizo en la *Resolución* recurrida sobre desacato. Por tanto, confirmamos la imposición de las sanciones por entender que el foro primario actuó correctamente en su determinación.

En vista de lo anterior, concluimos que el primer error no se cometió. Sin embargo, aclaramos que, en el caso de autos, estamos ante un desacato civil, por lo que modificamos dicha *Resolución* a tales efectos.

**IV**

Por los fundamentos expuestos, expedimos el auto de *certiorari* y modificamos la *Resolución* emitida el 22 de noviembre de 2022 sobre desacato para que se entienda que se encontró a la peticionaria incursa en desacato civil. Así modificada, se confirma. Por otra parte, se confirma la *Resolución* sobre la custodia y relaciones filiales emitida en igual fecha.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones